**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | |
|---|---|
| **EDITH KLEINER,** § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 1:04-CV-0204-C |
| § | |
| **JO ANNE B. BARNHART,** § | |
| **Commissioner of Social Security,** § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the court upon Plaintiff's complaint filed August 18, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of her complaint on November 4, 2004, Defendant filed her brief on December 6, 2004, and Plaintiff filed her reply on December 13, 2004. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on October 17, 2002, alleging disability beginning December 1, 1999. Tr. 9. Plaintiff's applications were denied initially and upon reconsideration. Tr. 9, 29-32, 34-40, 257-66. Plaintiff filed a Request for Hearing by Administrative Law Judge on July 13, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on February 3, 2004. Tr. 28, 277-314. Plaintiff, represented by a non-attorney, testified in her own behalf. Tr. 280-99. A witness, Ronnie McGinn, also testified. Tr. 299-300. John Simonds, a medical expert ("ME") and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 302-14. At the hearing, Plaintiff requested that her alleged onset date be amended to June 9, 2000. Tr. 9. The ALJ issued a decision unfavorable to Plaintiff on March 18, 2004. Tr. 6-19.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements on June 9, 2000, through the date of his decision and that Plaintiff had not engaged in substantial gainful activity at any time since June 9, 2000. Tr. 10. He found that Plaintiff has "severe" impairments, including degenerative disk disease, osteoarthritis, and a seizure disorder. Id. He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Id. The ALJ also found that Plaintiff's diagnosed sleep apnea with upper airway resistance syndrome, headaches, history of carpal tunnel syndrome, and depression were not "severe" impairments under the act. Tr. 15. He noted that after diagnosis, Plaintiff reported no complaints related to her sleep disorder/airway resistance syndrome. Id. He also noted that recent nerve conduction tests indicated no recurrence of the carpal tunnel

syndrome after surgical intervention. *Id*. He also specifically found that Plaintiff's depression caused no more than mild limitations in her daily activities; social functioning; or concentration, persistence, or pace; and caused no episodes of decompensation. Tr. 15. The ALJ found that there was no evidence in the record demonstrating that the nonsevere impairments had more than a minimal effect on her ability to do basic work activities, citing *Bowen v. Yuckert*, 482 U.S. 137 (1987); *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), and Soc. Sec. Ruling 96-3p (July 2, 1996). *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy. Tr. 10-19.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 16. He discussed the medical evidence in the record regarding Plaintiff's degenerative disk disorder and arthritic pain. Tr. 15. He found that Plaintiff has underlying medically determinable impairments which could reasonably cause the symptoms alleged, citing 20 C.F.R. §§ 414.1529 and 416.920 and Soc. Sec. Ruling 96-7p (July 2, 1996). Tr. 16. He found, however, that her complaints suggested a much greater degree of impairment than was established by the objective medical evidence alone. *Id*. The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. Tr. 16-17. He concluded, based on the record, that she "has greatly exaggerated both the nature and the severity of her subjective complaints in an overt attempt to appear disabled." Tr. 17.

The ALJ found that Plaintiff could not return to her past relevant work as a certified nursing assistant, a waitress, a construction worker, a caretaker, a cashier, or a service desk clerk. Tr. 18.

He noted that Plaintiff was considered a "younger individual" with a G.E.D., which he found to be the equivalent of a high school education in light of her vocational training as a certified nursing assistant. 20 C.F.R. §§ 416.963, 416.964; Tr. 18.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of sedentary work activity, limited to jobs that do not require more than occasional stooping, balancing, crouching, crawling or kneeling; that do not require climbing; that do not require working at unguarded heights or near unguarded hazardous mechanical equipment; that do not require operating motorized vehicles; and that do not require maintaining fixed concentration and attention for periods of longer than 30 minutes without the opportunity to briefly refocus for a minute or two and come back to fixed concentration. Tr. 17. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 18-19. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of bench assembler, with 21,000 jobs in Texas and 302,000 nationally; and document preparer, with 2,500 jobs in Texas and 106,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 18-19.

Plaintiff submitted a Request for Review of Hearing Decision/Order on March 29, 2004. Tr. 5. The Appeals Council issued its opinion on June 24, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 3-4. The ALJ's decision, therefore, became the final decision of the Commissioner.

On August 18, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271;

*Newton*, 209 F.3d at 453. In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 18-19.

### III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to base his RFC assessment on medical evidence, rejected the opinion of the psychological consultative examiner ("CE") and the state agency medical consultants who opined that Plaintiff's mental impairment was "severe," and failed to incorporate mental limitations into the hypothetical questions posed to the VE.

**A.   Whether the ALJ erred in making his RFC assessment and by failing to fully and fairly develop the record.**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to base his assessment on any medical evidence. Plaintiff alleges that the ALJ's RFC assessment is, instead, based "on a tacit presumption that, so long as an individual is under the age of 45 and breathing," she is capable of doing work at the sedentary exertional level. Pl. Brief at 5.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

In his opinion the ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of sedentary work which did not require more than occasional stooping, balancing, crouching, crawling or kneeling; which did not require climbing, work at unguarded heights, or near hazardous material; which did not require operation of motorized vehicles; and which did not require maintaining fix concentration and

-6-

attention for periods of longer than 30 minutes without the opportunity to briefly refocus for a minute or two and come back to a fixed concentration. Tr. 17. The ALJ noted that sedentary work involves lifting of no more than 10 pounds at a time and involves mostly sitting, with occasional walking and standing. *Id*.

Plaintiff argues that there is no opinion in the record from a treating or examining physician concerning her specific functional limitations to support this RFC finding. She argues that the ALJ was not qualified to interpret the raw medical data or to translate such data into functional terms.

The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings; the effects of treatment; reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996)("SSR 96-8p")(emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. *Id*. The ALJ may seek additional evidence or clarification from a claimant's medical source when the report from that source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or it does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1512(e). If the evidence is consistent but not sufficient to determine whether the claimant is disabled, or if after weighing the evidence the ALJ determines that he or she cannot reach a conclusion about whether the claimant is disabled, the ALJ will try to obtain additional evidence. 20 C.F.R. § 404.1527. The absence of such a statement, however, does not in itself make the record incomplete. 20 C.F.R. § 404.1513(b)(6). In a situation where no medical statement has

been provided, the court inquiry "focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

Plaintiff's neurologist noted that she reported approximately one seizure while not on her antiepileptic drugs for several months. Tr. 244. The neurologist advised Plaintiff to avoid driving, machinery operation, heights, bodies of water, all hazardous materials handling, and contact sports. Tr. 246. Plaintiff testified that she was able to watch television. Tr. 287. She testified that she did not lift anything over 20 pounds. Tr. 288. She also testified that she drives, although she has been instructed by her doctor not to drive. Tr. 292. Plaintiff indicated that she walks 2 to 3 blocks every other day or tries to do some house cleaning for exercise. Tr. 120. She also indicated that she walks to the store. Tr. 128.

The ALJ described the criteria for sedentary work in his decision as set forth in 20 C.F.R. §§ 404.1567 and 416.945. Tr. 17. He noted the advice of a physician, who indicated that Plaintiff should increase her aerobic activity; the advice of her neurologist, who indicated that she should not drive; the description of Plaintiff's daily activities as noted by the psychological CE; and Plaintiff's testimony that she can only stand for 5 to 10 minutes, sit for 15 minutes, and lift/carry 15 to 18 pounds. Tr. 11-17. The ALJ's RFC finding is consistent with the reports of Plaintiff's neurologist, who opined that Plaintiff should avoid driving, machinery operation, heights, bodies of water, all hazardous materials handling, and contact sports; with Plaintiff's testimony and reports of her own activities, indicating that she can sit and watch television, walk to the store, and stand; with the report of the psychological CE, who noted that pace and persistence were unimpaired during testing and who noted no concentration deficits, although Plaintiff has some difficulties with mathematics when asked to perform serial sevens; and the report of the consultative physical evaluator, who noted that she could heel-to-toe walk and squat/arise with fair ability. Each of these pieces of evidence were addressed by the ALJ in his decision.

Plaintiff argues that the ALJ is not qualified to interpret raw medical data or translate such data into findings, citing *Ripley*. She argues that there is no opinion in the record from a treating or examining physician concerning her specific functional limitations to support the ALJ's findings. However, as noted above, the ALJ's RFC finding was supported by the findings and opinions of Plaintiff's treating neurologist and was consistent with the reports and opinions of the consultative physical and psychological examiners, as well as Plaintiff's own reports and testimony. In *Ripley*, the ALJ relied solely upon portions of the claimant's testimony in finding that the claimant could perform the exertional requirements of sedentary level work. *Ripley*, 67 F.3d at 557. This case may, however, be distinguished from *Ripley*. The ALJ's RFC finding is supported by and is consistent with evidence in the record, which the ALJ appropriately discussed in his opinion. The RFC finding, moreover, is also appropriately based upon relevant evidence in the record, including medical history, medical signs and laboratory findings; the effects of treatment; reports of daily activities, lay evidence, recorded observations, and Plaintiff's statements and testimony. *See* SSR 96-8p. Rather than solely relying upon those portions of the claimant's testimony supporting his finding, as the ALJ did in *Ripley*, the ALJ in this matter relied upon evidence from various medical sources, as well as specific portions of Plaintiff's testimony and statements indicating that she could walk, lift/carry, sit, and stand to a degree consistent with sedentary work. The limitations incorporated into the RFC by the ALJ directly reflect the opinions and findings of the treating neurologist and CEs, as well as the findings and notations of other treatment providers. I find that there is substantial evidence in the record to support the ALJ's RFC finding.

Plaintiff argues that the ALJ failed to develop the record and that the ALJ failed to base his opinion upon evidence. "The ALJ has a duty 'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001)(quoting *Newton*, 209 F.3d at 458). The claimant has the burden to prove that he is disabled within the

meaning of the Social Security Act. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). An ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)(citing *Turner v. Califano,* 563 F.2d 669, 671 (5th Cir. 1977)). Moreover, this court may not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)(citing *Brock*, 84 F.3d 726). In order to establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Carey*, 230 F.3d at 142 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). There is substantial evidence in the record to support the ALJ's RFC finding, and Plaintiff has failed to demonstrate that she could and would have adduced evidence that might have altered the result. I find no prejudice in the failure of the ALJ to further develop the record, to recontact a treating physician, or to obtain a medical source statement. *See Ripley*, 67 F.3d at 557.

**B.  Whether the ALJ erred by failing to incorporate limitations imposed by Plaintiff's mental impairment into the hypothetical questions posed to the VE.**

Plaintiff argues that the ALJ erred by failing to incorporate limitations imposed by her mental impairment into the hypothetical questions posed to the VE. Plaintiff essentially argues that the ALJ erred by failing to accept the opinion of the psychological CE, who indicated that Plaintiff's mental impairment is "severe," and the opinion of the state agency medical consultant based on the opinion of the psychological CE.

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir., 1992) (citing 42 U.S.C. § 423(d)(3)). The existence of an impairment does not in itself establish

disability; a claimant is disabled only if she is "incapable of engaging in *any* substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986). Under the Social Security Regulations, the severity of an impairment or impairments is considered at the second step of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520. A claimant must show that he or she has a severe medical impairment before the claimant can be determined disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations further provide that an impairment must significantly limit the person's ability to do basic work activities in order to be considered severe. 20 C.F.R. § 404.1520(c). Thus,

> [i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled.

*Id.*

The Supreme Court held that this "severity regulation" is valid on its face and "is not inconsistent with the statutory definition of disability." *Bowen,* 482 U.S. 137, 146, 154, 107 S.Ct. 2287, 2293, 2298 (1987).

The Fifth Circuit has considered the severity regulation, both before and after the Supreme Court's decision in *Bowen v. Yuckert*. In *Stone*, 752 F.2d 1099, the court approved of an earlier construction of the severity regulation that set this standard for determining whether a claimant's impairment is severe:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Id.* at 1101 (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984). In *Loza,* 219 F.3d 378, the court held that the standard set forth in *Stone* remained the correct standard. *Id.* at 392. However, the Commissioner may require a claimant to make a *de minimis* showing that her

impairment is severe enough to interfere with her ability to do work under this standard. *Anthony*, 954 F.2d at 293 n.5.

The court in *Stone* specifically required that ALJs and Appeals Councils in the Fifth Circuit must set forth the correct standard in their decisions by reference to the *Stone* opinion or to another opinion of the same effect or by including an express statement in the decision that the construction given to the severity regulation is the construction used in *Stone*. 752 F.2d at 1106. Failure to do so will result in the court's assumption that the ALJ or Appeals Council has applied an incorrect standard. *Id*. Moreover, the claimant need only make a *de minimis* showing that her impairment is severe enough to interfere with her ability to do work to satisfy this standard. *Anthony*, 954 F.2d at 294.

In making his severity finding, the ALJ indicated that although Plaintiff has been diagnosed with depression, he found this impairment to be "not severe." Tr. 10. He specifically found that this mental impairment has caused no more than mild limitations in her daily activities, social functioning, concentration, persistence, and pace; and that Plaintiff has had no episodes of decompenstion relating to this impairment, citing *Bowen* and *Stone*. Tr. 15. The ALJ discussed the results of the formal mental status examination, wherein the CE noted that Plaintiff had appropriate and controlled mood and affect; was alert and oriented; demonstrated no abnormal psychomotor activity; reported no preoccupations; and demonstrated no abnormal thought processes. Her memory was intact, and no deficits in concentration, persistence, or pace were noted. Tr. 12-13. The ALJ also discussed the results of personality testing, which indicated that Plaintiff "strongly emphasized negative characteristics," thereby rendering her clinical scales "highly questionable." Tr. 13. The ALJ noted that the psychological CE nevertheless opined that Plaintiff's diagnosis included

depression with a Global Assessment of Functioning ("GAF")[1] score of 50.[2] The ALJ further noted that "this assessment of the severity of claimant's symptoms appears to have been based solely upon her subjective complaints," and he rejected this assessment by the psychological CE. *Id*.

Plaintiff argues that the ALJ erred by rejecting this assessment on two grounds: first, that this report is "the Commissioner's own evidence which the ALJ is attempting to impeach," and second, that it is "ludicrous to reject the report, and the opinion of the State agency medical consultant based on the report, on [the] ground that the diagnostic opinion of the clinical psychologist is based only on the plaintiff's report of subjective symptoms." Pl. Brief at 9.

SSR 96-6p provides that "[f]indings of fact made by state agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources." It further provides that ALJs and the Appeals Council "may not ignore these opinions and must explain the weight given to these opinions in their decisions." The ALJ, however, is clearly not bound by findings made by state agency or other program physicians and psychologists, although he may not ignore these opinions and must explain the weight given to the opinions in his decisions. SSR 96-6p. The opinions of state agency medical and psychological consultants and other program physicians and psychologists "can be given weight only insofar as they are supported by evidence in the case record." *Id*.

---

[1] The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32. This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id*.

[2] A GAF score of 41-50 indicates "serious symptoms" such as suicidal ideation, or any "serious impairment in social, occupation, or school functioning," such as inability to keep a job or having no friends. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

In determining not to accept the assessment of the psychological CE of depression characterized by serious symptoms, the ALJ appropriately indicated that this assessment was not entitled to weight insofar as the examiner's own testing rendered the clinical scales questionable and indicated that Plaintiff "strongly emphasized negative characteristics." Tr. 13.  He noted that the assessment appeared to be based solely upon Plaintiff's subjective complaints.  *Id*. He discussed extensively the evidence in the record which supported his negative credibility finding, including her inconsistent reports to various treatment providers; her lack of compliance with prescribed medications; the normal results of objective testing and the fact that no medical source has documented observing any type of seizure behavior at all; and the inconsistency between Plaintiff's own reports of her activities and her allegations of severe functional limitations.  Tr. 11-17.  He ultimately found that Plaintiff has "greatly exaggerated both the nature and the severity of her subjective complaints in an overt attempt to appear disabled." Tr. 17.  The ALJ pointed to numerous pieces of evidence in the record in support of his credibility finding, which support his determination that the psychological CE's opinion that Plaintiff's depression was characterized by serious symptoms was not entitled to great weight.

It is, of course, the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion.  *See* 20 C.F.R. §§ 416.946, 416.927(e).  The ALJ considered the medical opinions of the state agency medical consultant and the psychological CE in making his RFC determination, pursuant to 20 C.F.R. §§ 404.1527, 416.927, and SSR 96-6p. Tr. 12-13,15.  He is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion.  Rather, he has the sole responsibility for weighing the evidence, may choose whichever physician's diagnosis is most supported by the record, and may incorporate into the RFC assessment the limitations supported by that diagnosis or diagnoses.  *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).  He also has the responsibility to resolve questions of credibility

and questions arising from conflicting medical opinions. *Masterson*, 309 F.3d at 272. The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. Moreover, the ALJ appropriately resolved issues of credibility and conflicts in the evidence in determining not to accept the opinion of the CE that Plaintiff's mental impairment involved severe symptoms and in determining that Plaintiff's mental impairment was not "severe." I find that the ALJ did not err in finding that Plaintiff's mental impairment was not "severe" at step 2 of the sequential evaluation process, in failing to accept the opinion of the psychological CE or state agency medical consultant that Plaintiff's impairment was severe, or in failing to incorporate any limitations imposed by this impairment into his RFC assessment.

Plaintiff argues that the ALJ erred by failing to incorporate limitations imposed by her mental impairment into the hypothetical questions posed to the VE. A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

The record demonstrates that the ALJ properly incorporated those limitations that he accepted into the hypothetical questions he posed to the VE, including work at the sedentary level

limited to jobs that do not require more than occasional stooping, balancing, crouching, crawling or kneeling; that do not require climbing; that do not require working at unguarded heights or near unguarded hazardous mechanical equipment; that do not require operating motorized vehicles; and that do not require maintaining fixed concentration and attention for periods of longer than 30 minutes without the opportunity to briefly refocus for a minute or two and come back to fixed concentration. Tr. 311-13.  The record further demonstrates that Plaintiff's representative had the opportunity to further examine the VE and to obtain testimony on other claimed restrictions.  Tr. 314.  Plaintiff's representative specifically presented hypothetical questions involving additional proposed limitations, including a limitation to occasional handling due to weakness in the hand grip; inability to understand and remember detailed instructions; and requiring rest periods of four-hours duration twice per eight-hour workday.  Tr. 314.  The VE testified that such a person would be unemployable.  *Id*.  The ALJ, ultimately, did not accept these proposed limitations.  However, the hypothetical question presented to the VE need only reasonably incorporate the limitations accepted by the ALJ.  *See Bowling v. Shalala*, 36 F.3d 431, 435-36 (5th Cir. 1994)(no reversible error where the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations).  The ALJ did not err by failing to incorporate limitations based on Plaintiff's mental impairment into the hypothetical questions posed to the VE, having specifically found that such impairment was not "severe."  I find that the ALJ did not err in evaluating the severity and limitations imposed by Plaintiff's mental impairment, in discounting the opinions of the psychological CE and the state agency physician, and by failing to incorporate limitations based on Plaintiff's mental impairment into the hypothetical questions posed by the VE.  The decision of the ALJ is supported by substantial evidence.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 15th day of September, 2005.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**

-18-